**Larry D. BEALE, Director of Special Fund, Appellant,**

v.

**Otis SHEPHERD, National Mines Corporation, and Workers' Compensation Board, Appellees.**

**PEABODY COAL COMPANY, Appellant,**

v.

**Roger J. KIRKWOOD; Larry D. Beale, Director of Special Fund; and Workers' Compensation Board, Appellees.**

**PEABODY COAL COMPANY, Appellant,**

v.

**Carlos R. VINCENT; Larry D. Beale, Director of Special Fund; and Workers' Compensation Board, Appellees.**

**Nos. 89–SC–601–WC, 89–SC–978–WC and 90–SC–256–WC.**

Supreme Court of Kentucky.

March 14, 1991.

As Modified on Denial of Rehearing July 3, 1991.

Denis S. Kline, Thomas Dockter and David R. Allen, Labor Cabinet, Louisville, for Larry D. Beale, Director of Special Fund.

John David Preston, Perry & Preston, Paintsville, for Otis Shepherd.

David H. Neeley, Francis, Kazee & Francis, Prestonsburg, for Nat. Mines Corp.

William P. Swain and Douglas A. U'sellis, Louisville, for Peabody Coal Co.

C. Terry Earle, Greenville, for Carlos R. Vincent.

Dick Adams, Madisonville, for Roger J. Kirkwood.

LAMBERT, Justice.

In these three consolidated appeals, the claimants suffered an occupational injury and an occupational disease, each of which caused permanent disability. For each claimant the occupational injury and the last injurious exposure to hazards resulting in the occupational disease occurred on the same date. The percentage of occupational disability attributable to the combination of disabling conditions exceeded 100% for each claimant.

In *Beale v. Shepherd*, claimant was found to be 50% permanently disabled due to an occupational back injury. The liability was divided equally between the Special Fund and the employer, making each liable for 25% permanent partial disability. Claimant was also found to be 100% permanently disabled due to the occupational disease pneumoconiosis with the Special Fund to pay 75% of the disease award, and the employer to pay the remaining 25%. The combination of these awards is 150% permanent disability.

In *Peabody Coal Co. v. Kirkwood*, claimant was found to be 30% permanently disabled due to an occupational arm injury, with the employer to bear total responsibility for payment of the injury award. Claimant was also found to be 100% permanently disabled due to the occupational disease, pneumoconiosis, with the Special Fund to pay 75% of the disease award and the employer to pay the remaining 25%. The com-

bination of these awards is 130% permanent disability.

In *Peabody Coal v. Vincent*, the claimant was found to be 75% permanently disabled due to an occupational back injury, with 25% permanent partial disability attributable to a noncompensable prior active condition, 25% permanent partial disability apportioned to the employer, and 25% permanent partial disability apportioned to the Special Fund. Claimant was also found to be 100% permanently disabled due to the occupational disease, pneumoconiosis, with the Special Fund to pay 75% of the disease award and the employer to pay the remaining 25%. The combination of these awards is 175% permanent disability.

In *Beale v. Shepherd*, the Court of Appeals held that when the combination of a permanently disabling injury award and a permanently disabling disease award exceeds 100% permanent disability, the calculation and duration of injury benefits is determined pursuant to KRS 342.730(1)(b).

In *Peabody Coal Co. v. Kirkwood* and *Peabody Coal Co. v. Vincent*, the Court of Appeals held that the proper calculation and duration of injury benefits is determined pursuant to KRS 342.730(1)(a).

The central issue in each of these three cases, therefore, is whether, when there is an award of permanent total disability due to occupational disease, as well as an award of permanent partial disability due to an injury, the dollar value of the injury claim should be computed under KRS 342.730(1)(a) or under KRS 342.730(1)(b). The method chosen will affect both the maximum weekly benefit and the maximum period over which the defendant will be required to pay the injury award. A secondary issue is the method by which the resulting award will be apportioned among the defendants. In deciding these issues, a review of prior decisions of this Court, as well as of the statutes in effect at the time of those decisions, is in order.

## COMPUTING THE INJURY CLAIM

■ When an employee is totally and permanently disabled by an occupational disease and has also suffered a permanently disabling work-related injury, the rule has been that the employer may not be relieved of liability on the injury claim by the existence of an occupational disease claim. The claim for the injury must be paid first. In the event that the injury award is for less than permanent total disability, the balance of benefits due, up to the maximum for permanent total disability, would be paid under the occupational disease claim. The net effect of this is to reduce the amount due on the occupational disease claim by the value of the injury claim. Where the injury has resulted in permanent total disability, the amount of the occupational disease award would effectively be zero, unless for some reason the injury became less than totally disabling before the entire award was paid. *Estep Coal Company v. Ward*, Ky., 421 S.W.2d 367 (1967); *Young v. Sturgill*, Ky., 445 S.W.2d 442 (1969); *Beth–Elkhorn v. Young*, Ky., 474 S.W.2d 64 (1971). The issues presently before us involve determining the applicability of these principles to the current statutory scheme; specifically, whether the dollar value of the injury claim should be computed using KRS 342.730(1)(a) or KRS 342.730(1)(b).

At the time the cases which first enunciated these principles were decided, the statutes governing awards for occupational disability were KRS 342.095 *et seq*. An award for permanent total disability under KRS 342.095 was based on 66⅔% of the employee's average weekly wage (but was not less than 25% of 85% of the state average weekly wage nor more than 55% of 85% of the state average weekly wage) and was paid for 425 weeks. Awards for permanent partial disabilities were governed by KRS 342.105 and KRS 342.110 and were paid on a maximum of 50% of 85% of the state average weekly wage for from 15 to 400 weeks, depending on the nature of the loss.

*Yocum v. Layne*, Ky., 553 S.W.2d 52 (1977), decided under these statutes, held that when there is a subsequent injury and the sum of the employee's disabilities equals 100%, an employer may be held liable only for the degree of disability attributable to the injury incurred in his employ.

Therefore, even though the employee was permanently and totally disabled, the employer was required to pay for only the 35% permanent partial disability attributable to the employment. The Special Fund was required to pay the compensable portion of the balance of an award for permanent total disability.

On January 1, 1973, the statutory scheme changed and the previously controlling statutes were repealed. KRS 342.730 was enacted to govern the award of income benefits. Awards for permanent total disability were payable "during such disability" and the duration of awards for permanent partial disability were increased for certain scheduled disabilities. For nonscheduled permanent partial disabilities, there was no apparent limit on the duration of the disability award. Both total and partial disability benefits were based on 55% of the average weekly wage plus 2½% thereof for each of up to three dependents. The maximum allowable benefit was 60% of the state average weekly wage, and the minimum was 20% thereof. Where there was a subsequent injury, KRS 342.120 required that an employer be held liable only for the increase in disability due to the subsequent injury.

*Transport Motor Express v. Finn,* Ky., 574 S.W.2d 277 (1978), was decided under these statutes. In that case the Court ruled that where the sum of an employee's disabilities equals 100%, an award for permanent total disability must be made under KRS 342.730(1)(a), and each defendant must pay his proportional share of the lifetime award. The Court also ruled that KRS 342.120 served to provide for the equitable division of liability among defendants and should not be interpreted to bar requiring the employer who is liable for a partially disabling injury to pay his proportional share of total disability benefits rather than an amount based on partial disability. As noted in *Sovereign Coal Corp. v. Adkins,* Ky.App., 690 S.W.2d 129, 131 (1985), the apparent inconsistency in the results of *Layne, supra,* and *Finn, supra,* may stem from differences in the benefits statutes controlling the two cases. In *Finn,* as distinguished from *Layne, supra,* and from the cases now under consideration, there was no difference in the maximum allowable benefit for permanent total and permanent partial disability, and both types of benefits were payable for life. The major concern of the Court in *Finn, supra,* was to emphasize the different functions served by KRS 342.730 and KRS 342.120.

The controlling statutes were again amended in 1974, 1977, 1978, and 1980. Effective July 15, 1980, a permanent total disability award was paid for life and was tied to 100% of the state average weekly wage. KRS 342.730(1)(a). A permanent partial disability award was paid for 425 weeks for all injuries and was tied to 75% of the state average weekly wage. KRS 342.730(1)(b). Although there have been subsequent amendments, the statues today remain the same in these respects.

KRS 342.120, the apportionment statute, was amended in 1982 to eliminate the language holding an employer liable "only for" the degree of disability which would have resulted from the injury in his employ had there been no preexisting disability, disease, or condition. The amended statute holds the employer liable for all income benefits until the benefits paid have reached a percentage of full income benefits awarded which is equal to the percentage of disability attributable to the injury incurred in his employ. KRS 342.120(4). In *Sovereign Coal, supra,* this amended statute was interpreted, in the case of an employee who was 100% disabled from a combination of an injury and occupational disease, as requiring the employer to pay benefits based on a percentage of total, rather than of partial, disability. However, that interpretation was dicta. The case was decided under *Finn, supra,* and while the claim in *Sovereign Coal,* arose in 1981, the amendment was not effective until July 15, 1982.

It must also be noted that, unlike the cases that are under consideration, *Sovereign Coal, supra; Teledyne–Wirtz v. Willhite,* Ky.App., 710 S.W.2d 858 (1986), and *Ridgeway Coal v. Church,* Ky.App., 717 S.W.2d 510, 511 (1986), each dealt with

multiple claims which totalled 100% disability. Therefore, if the totally disabled claimant was to receive a lifetime award, each defendant would have to pay his share of the award for life. In *U.S. Steel Corp. v. Wells*, Ky.App., 650 S.W.2d 264 (1983), while the combined awards exceeded the maximum weekly benefit, the court does not state the total percent of disability. In the cases at bar, each claimant has a 100% occupational disease claim, as well as an injury claim, so he will receive lifetime benefits regardless of how the injury claim is computed.

KRS 342.730, the statute which applies to the cases at bar, is substantially different from its predecessor, KRS 342.095 *et seq.* Despite the fact that *Estep v. Ward, supra; Sturgill, supra;* and *Beth–Elkhorn v. Young, supra;* are factually similar to the cases at bar, in that each claimant was more than 100% disabled, they were controlled by KRS 342.095 *et seq.* and are, therefore, distinguishable. Similarly, *Layne,* decided under that same statutory scheme, is distinguishable. In resolving the issues before us it is, nonetheless, helpful to consider the principles discussed in those cases within the context of our present statutory scheme.

■ When an employee is totally and permanently disabled, by a combination of injuries or of an injury and occupational disease, he ought to be compensated for life at the rate for total permanent disability (KRS 342.730(1)(a)), rather than for a limited duration and at the lesser rate for permanent partial disabilities (KRS 342.730(1)(b)). Each defendant should, in this instance, be liable for his share of the lifetime award. This principle of protecting the interests of the injured worker is a basic tenet of workers' compensation law.

While an employer should not be relieved of liability on an injury claim by the existence of an occupational disease claim, it must also be remembered that one of the underlying purposes of creating a subsequent injury fund was to encourage employers to hire already disabled workers. To that end, it has been recognized that the employer has an interest in being held liable for no more of the disability than that received in his employ.

■ In *Sovereign Coal, supra; Teledyne-Wirz, supra;* and *Ridgeway Coal, supra;* the addition of disabilities was necessary to protect the worker who would have otherwise received the lesser benefits stated in KRS 342.730(1)(b) for only 425 weeks but was, nonetheless, totally disabled. Where, as in the cases at bar, the employee is permanently and totally occupationally disabled by an occupational disease and has also suffered a permanently and partially disabling injury, he will unquestionably receive lifetime benefits due to the occupational disease; therefore, his interests are protected. It is not necessary, as it was in the cases just cited, to add partial disabilities together to reach a total disability award. Therefore, in cases where the claimant is entitled to lifetime benefits for occupational disease, the interests of the employer must be considered, and the excess disability, which is attributable to a partially disabling injury, should be computed as for a permanent partial disability using KRS 342.730(1)(b). To the extent that it is inconsistent with this result, *Palmore v. France*, Ky.App., 783 S.W.2d 398 (1990), is hereby overruled.

### APPORTIONING THE AWARD

■ This holding does not relieve the employer of liability on the injury claim by virtue of the concurrent 100% occupational disease claim. The dollar amount of the injury claim must be deducted from the maximum benefit allowed for total disability. The balance of the total disability allowable then becomes the effective amount of the occupational disease award.

After the values of the injury claim and the occupational disease claim have been determined, they should be apportioned between the defendants according to their liability. *U.S. Steel v. Wells, supra; Island Creek Coal v. Davis*, Ky.App., 761 S.W.2d 179 (1988). The formula for computing the award should, therefore, produce results consistent with the following:

1. Determine the value of the injury claim and the occupational disease claim.

Total allowable benefits under KRS 342.-730(1)(a)

LESS: *value of the injury claim under KRS 342.730(1)(b)*

Total occupational disease benefit

2. Apportion the value of each claim according to the liability of each defendant.

Total injury benefit × % of liability = defendant's share of the award

Total occupational disease benefit × % of liability = defendant's share of the award

3. Add together the benefits due on each award plus any interest, plus any applicable charges and less any applicable credits, to determine the total liability for each defendant.

4. Divide the total liability of each defendant by the maximum weekly benefit to determine the number of weeks over which each defendant will pay his portion of the award.

5. The employer pays his entire liability on the combined award. (KRS 342.-120)

6. Upon completion of the employer's payments, the Special Fund pays its share of the award. (KRS 342.120).

Accordingly, the decision of the Court of Appeals in *Beale v. Shepherd* is hereby affirmed. The decisions in *Peabody Coal Co. v. Kirkwood* and *Peabody Coal Co. v. Vincent*, are hereby reversed, and those cases are remanded for proceedings consistent with this opinion.

STEPHENS, C.J., and COMBS, LEIBSON, SPAIN and WINTERSHEIMER, JJ., concur.

REYNOLDS, J., not sitting.